IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EXECUTIVE RISK INDEMNITY, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> CAMERON J. LEWIS, et al., <br><br> Defendants. | ORDER DENYING THE TRUSTEE'S MOTION FOR AN ORDER REFERRING THIS LITIGATION TO THE BANKRUPTCY COURT <br><br><br><br><br><br> Case No. 2:04-CV-01115 PGC |

R. Kimball Mosier, in his capacity as the bankruptcy trustee for defendant National School Fitness Foundation (NSFF) and on behalf of NSFF, moves the court for an entry of order referring this case to the United States Bankruptcy Court [#80]. The Trustee argues that plaintiff Executive Risk Indemnity's joinder of the Trustee and NSFF in this suit has caused the litigation to become a core bankruptcy matter and that should therefore be referred to the appropriate bankruptcy court. Executive Risk counters that the Trustee and NSFF stipulated to lifting the automatic stay prohibiting any action against NSFF before this court so that all the rights of all interested parties could be resolved before this court. Additionally, Executive Risk argues that this matter is not part of the core proceeding and should not be referred to the bankruptcy court.

For the reasons discussed below, the court DENIES the Trustee's and NSFF's motion for

an entry of an order referring this action to the U.S. Bankruptcy Court [#80]. The court also GRANTS the respective motions for joinder filed by defendants Dan Clark [#122] and Marion Markle [#117]. And the court DENIES defendant Shauna Black's motion for leave to file her amended answer and counterclaim to withdraw her request for a jury demand [#124]. Finally, in light of these actions, the motion by Executive Risk for a Rule 16 Scheduling Conference [#96] is GRANTED.

## BACKGROUND

For the purposes of resolving this motion, the court finds the following facts. NSFF is a not-for-profit organization founded to combat childhood obesity. Executive Risk issued NSFF a Not-For-Profit Directors, Officers and Trustees Liability Policy, which was renewed by NSFF for November 15, 2003 through November 15, 2004. This policy provided specific coverage for NSFF, typically known as "entity" coverage, and had limits of $5,000,000. Because the policy was not a "wasting policy" – namely, a policy that reduces the amount a covered person or entity can recover if defense costs are provided – the advancement of defense expenses under the terms of the policy did not reduce the policy's $5,000,000 limit.

On June 1, 2004, NSFF filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. On July 9, 2004, the Bankruptcy Court appointed the Trustee for NSFF. In early October of 2004, the Attorney General for the State of Ohio brought an action for fraud, conspiracy, and breach of fiduciary duty against the former officers and directors of NSFF. On October 19, 2004, the United States Attorney for the District of Minnesota indicted Cameron J. Lewis and others along with NSFF for running a scheme to defraud school districts and federally-

insured financial institutions.

On December 6, 2004, Executive Risk filed its original complaint before this court, seeking a declaration that the policy it issued to NSFF was void *ab initio*, rescinded, or alternatively, that the policy afforded no coverage for certain claims noticed to Executive Risk by former directors and/or officers of NSFF.  Specifically, Executive Risk asserted that material misrepresentations by NSFF in its renewal application voided the policy.  Aware of the automatic stay related to NSFF's bankruptcy, Executive Risk did not name NSFF as a defendant in its original complaint.  On that same day, however, Executive Risk asked the Bankruptcy Court to lift the automatic stay to permit it to name NSFF as a defendant in the litigation before this court.  The trustee opposed Executive Risk's motion, and the Bankruptcy Court held a hearing on the matter.  On March 25, 2005, the Bankruptcy Court denied Executive Risk's motion for relief from the automatic stay.  At the hearing, Executive Risk conceded that the policy was the property of NSFF's estate and that the proceeds of the policy are also property of the estate to the extent the estate incurred defense expenses covered by the policy.[1]

The Trustee then demanded Executive Risk to cover the legal expenses from criminal proceedings pending in the District of Minnesota against NSFF and others.  Executive Risk agreed to cover these expenses under the terms and conditions of an interim defense funding agreement.  This agreement required that if the Bankruptcy Court, this court, or "other Court [determined] that [Executive Risk] is entitled to repayment of any of the Defense Expenses

---

[1] Trustee's Memo. in Supp. of Mot. to Refer to Bankr. Court, Doc. No. 81, Ex. A, 10-11 (July 18, 2006) (Bankr. Hearing Transcript).

advanced . . . to the Trustee . . . then such right or claim shall be deemed to constitute a timely filed and allowed Chapter 11 priority administrative claim pursuant to 11 U.S.C. § 503(b) against the NSFF bankruptcy estate."[2]  On September 14, 2005, the Bankruptcy Court approved the agreement, and deemed any right of Executive Risk "to repayment of any Defense Expenses . . . to constitute a timely filed and allowed Chapter 11 priority administrative claim."

In late November 2005, Executive Risk then advanced approximately $90,000 to cover the Trustee's defense expenses in connection with the criminal proceedings against NSFF.  On December 21, 2005, the Trustee and Executive Risk entered into an agreement stipulating to the termination of the automatic stay.[3]  On February 27, 2006, after a hearing with all relevant parties, the Bankruptcy Court entered an order granting Executive Risk's motion for relief from the automatic stay.  The order granted Executive Risk relief from the automatic stay to pursue litigation against NSFF's estate beginning on June 1, 2006.   Neither the Trustee, nor any other relevant party to this motion before this court, lodged any objections to that order by the Bankruptcy Court.

On July 11, 2006, Executive Risk filed an amended complaint naming the Trustee and NSFF as defendants in its action before this court.  On July 18, 2006, NSFF and the Trustee filed a motion for entry of an order referring this case back to the Bankruptcy Court.  The Trustee argues that this case is a core proceeding or, alternatively, a non-core proceeding that sufficiently

---

[2] Trustee's Memo. in Supp. of Mot. to Refer to Bankr. Court, Doc. No. 81, Ex. B (July 18, 2006) (Interim Defense Funding Agreement).

[3] Executive Risk's Memo. in Opp. of Mot. to Refer to Bankr. Court, Doc. No. 98, Ex. B (Aug. 4, 2006) (December Stipulation Agreement).

relates to the bankruptcy case to require a reference.  Contemporaneously, the Trustee also filed a motion in Bankruptcy Court to determine that this litigation is a core proceeding or, alternatively, a non-core proceeding sufficiently related to NSFF's bankruptcy case.  In its response, Executive Risk relies on a judicial estoppel argument, maintaining that both the parties' stipulation to the lifting of the stay along with the Bankruptcy Court's order granting relief from automatic stay precludes a reference.  Executive Risk further argues that the litigation is not a core proceeding or related to NSFF's bankruptcy case, and that judicial efficiency will be enhanced by keeping the litigation in this court.

## STANDARD OF REVIEW

The first issue this court must decide is whether it or the Bankruptcy Court is the proper decisionmaker for the pending motion.  The Trustee contends in his motion that "[p]ursuant to 28 U.S.C. § 157(b)(3), the bankruptcy courts are required to determine in the first instance whether a matter is a core bankruptcy matter or a matter related to a bankruptcy case."[4]  While this assertion may be true as a general proposition, the narrow issue before this court is whether to refer this case back to the Bankruptcy Court.  That is an issue for *this* court, particularly in light of the fact that the Bankruptcy Court has already granted the stipulation lifting the automatic stay.  Of course, the Bankruptcy Court has specialized expertise on bankruptcy issues.  In light of the Bankruptcy Court's own decision to lift the stay blocking action in this court, however, it appears that this court is tasked with deciding the pending motion – that is, the motion to refer the matter back to the Bankruptcy Court.

---

[4] Trustee's Mot. to Refer to Bankr. Court, Doc. No. 80, at 3 (July 18, 2006).

The issues before this court close resemble a motion for summary judgment, as the Trustee seeks to remove this litigation action back to the Bankruptcy Court based on undisputed facts.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  The court must view the evidence, and draw reasonable inferences from that evidence, in the light most favorable to the nonmoving party.[6]  The nonmoving party may not, however, "rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing there is a genuine issue for trial."[7]  "The mere existence of a scintilla of evidence in support of the [non moving party's] position will be insufficient [to overcome summary judgment]; there must be evidence on which the jury could reasonably find for [the non-moving party]."[8]

## DISCUSSION

The Trustee argues that this litigation should be referred to the Bankruptcy Court. According to DUCivR 83-7.1 in relevant part, "unless a rule or order of this court expressly provides otherwise, any and all cases under Title 11 and all proceedings arising in or related to a case under Title 11 . . . are referred to the bankruptcy judges."  The Trustee asserts that this

---

[5] Fed. R. Civ. P. Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).

[6] *Cummings*, 393 F.3d at 1189; *Spaulding v. United States*, 279 F.3d 901, 904 (10th Cir. 2002).

[7] *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

[8] *Id.* at 252.

litigation is a "core proceeding" and should be referred to the Bankruptcy Court. In support of this position, the Trustee contends that this proceeding necessarily involves the determination of the claims Executive Risk asserts against NSFF. Second, the Trustee argues that this litigation is a core proceeding because it involves the determination of the NSFF estate's post-petition claim to policy proceeds. Third, the Trustee argues that this litigation is a core matter because it involves the "insured versus insured" exclusion to coverage. And finally, the Trustee argues, in the alternative, that even if the matter is somehow not a core proceeding, it is sufficiently related to the bankruptcy case to require a reference because any decision will affect the proceeds available for distribution to creditors.

     Executive Risk offers several responses. First, it advances an estoppel argument, contending that the December Stipulated Agreement and the Trustee's prior position before the Bankruptcy Court essentially estop the Trustee from seeking a reference of this litigation back to the Bankruptcy Court. Because the Bankruptcy Court already approved the stipulated agreement, and because the Trustee explicitly agreed to this agreement, Executive Risk maintains that the Trustee has agreed to have the matter decided by this court.

     Second, Executive Risk argues that referral back to the Bankruptcy Court is neither necessary or appropriate. It asserts that at least one of the defendants, and possibly Executive Risk as well, has already sought or will demand a jury trial and thus cause for withdrawal of this litigation from the Bankruptcy Court will ultimately occur anyway. Oral argument before the court also established that under Fed. R. Civ. P. 38(d), the jury demands by several of the defendants may not be withdrawn without consent of the parties, and therefore any jury demand

must stand at the moment. It also argues that proceeding against all of the defendants in this court would promote judicial economy, efficiency and convenience for all of the parties. Indeed, state-law contract issues apparently predominate in this case, and Executive Risk argues that the Bankruptcy Court lacks the authority to enter a final judgment resolving such contract disputes.[9] Therefore, to avoid this court reviewing *de novo* the Bankruptcy Court's proposed findings of fact and conclusions of law, Executive Risk argues that this court should decide this action in the first instance.

And finally, Executive Risk argues that its complaint does not "arise under" or "arise in" Title 11. Although the Trustee argues that Executive Risk seeks repayment of defense expenses, which would affect the post-petition proceeds and assets of NSFF, Executive Risk states that it "does not seek any affirmative monetary recovery from the NSFF estate in this action."[10] Therefore, it argues that this litigation, a long pending non-core state law contract dispute, should not be recast into a dispute over a contingent administrative claim against the NSFF estate. The court will resolve these competing claims in turn.

*A. Judicial Estoppel Might Be Applicable Here*

It is undisputed that both Executive Risk and the Trustee submitted a stipulated agreement to the Bankruptcy Court seeking relief from the automatic stay. The December Agreement specifically states that "in the reasonable exercise of the Trustee's business

---

[9] *See* 28 U.S.C. § 157(c)(1).

[10] Executive Risk's Memo. in Opp. of Mot. to Refer to Bankr. Court, Doc. No. 98, at 12 (Aug. 4, 2006).

judgment[,] the Trustee now believes that in order to resolve all issues concerning the Policy[,] it is in the best interest of the Debtor, its bankruptcy estate and its creditors to stipulate to the termination of the Automatic Stay as it may relate to the Policy and the District Court Litigation . . . ."[11]  According to this Agreement, the Trustee, NSFF and its estate "agree[d] to be joined as party defendants" in the litigation before this court, and they also stipulated "to the Bankruptcy Court entering an order modifying or terminating the Automatic Stay with respect to the Policy and the District Court Litigation[,] with such modification or termination of the Automatic Stay to be effective on June 1, 2006 . . . ."[12]   Additionally, the Trustee and NSFF agreed "to answer or otherwise respond to the amended complaint in the District Court litigation . . . [and Executive Risk] agree[d] not to take any deposition upon oral examination in the District Court Litigation until after July 1, 2006."[13]

On February 27, 2006, Bankruptcy Court Judge Judith Boulden held a hearing on Executive Risk's motion for relief from the automatic stay.  Judge Boulden entered her findings of fact and conclusions of law upon the record, finding that "the Trustee[,] in the reasonable exercise of his business judgment[,] has agreed to such modification or termination of the automatic stay in order to permit the respective rights under the Policy to be adjudicated in the District Court Litigation."[14]  Executive Risk has submitted the 46-page transcript of Judge

---

[11] December Agreement, at 2-3.

[12] *Id*. at 3.

[13] *Id*.

[14] Executive Risk's Memo. in Opp. of Mot. to Refer to Bankr. Court, Doc. No. 98, Ex. D, at 4-5 (Aug. 4, 2006) (Judge Boulden Order).

Boulden's hearing on the parties' motion, demonstrating that Judge Boulden certainly discussed the motion with all of the parties before granting the relief from automatic stay.[15]  All indications demonstrate that the Trustee at least had the opportunity to discuss any objections to the motion for relief from the automatic stay, and that Judge Boulden had the opportunity to review this motion thoroughly prior to granting it.  It is also clear that lifting of the automatic stay gave both parties certain rights, including the right of the Trustee *not* to have depositions taken in *this* litigation until after July 1, 2006.  While it is not *explicit* in the stipulated agreement, it is extremely close to explicit that the litigation matter in this court would proceed in this court.

Executive Risk's estoppel argument certainly carries weight with the court.  Where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."[16]  To apply judicial estoppel, (1) a party's position must be "clearly inconsistent" with its earlier position, (2) the position estopped must generally be one of fact rather than of law or legal theory, (3) judicial acceptance of the inconsistent position generally creates "the perception that either the first of the second court was misled," and (4) the party seeking to assert the inconsistent position would derive an unfair advantage or impose any unfair detriment on the

---

[15] Executive Risk's Memo. in Opp. of Mot. to Refer to Bankr. Court, Doc. No. 98, Ex. C (Aug. 4, 2006) (Feb. 27th Hearing Transcript).

[16] *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005).

opposing party if not estopped.[17]

To be sure, the Trustee's earlier agreement to lifting of the stay does not explicitly mean that he agreed to have this court handle all pending issues. In the December Agreement, the Trustee merely agreed to stipulate to lifting the automatic stay – in order words, to allow this case to move forward. But the Trustee now argues that he never agreed to forego his right to have the Bankruptcy Court review matters that could appropriately be brought before it. And he essentially argues that the December Agreement makes no mention as to whether the litigation shall proceed in this court, or in front of the Bankruptcy Court, once the relief from automatic stay is lifted.

The December Agreement does not explicitly state "the district court litigation will proceed unhindered by any pending bankruptcy issues." But, that agreement does indicate that the Trustee and NSFF agreed to answer or otherwise respond to the amended complaint *in this district court*. In exchange for finally agreeing to lift the stay in December 2005, Executive Risk agreed to not to take any deposition *in this district court litigation* until July 1, 2006. It appears that the Trustee got a benefit from this bargain – the automatic stay continued for another six months, while Executive Risk finally got the automatic stay lifted to proceed with litigation in this court.

The Trustee avails himself of the explicit terms in the December Agreement, stating that the parties agreed that they would neither argue or contend that the other party was barred or

---

[17] *See id*. (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996))

estopped from asserting any claims or defenses in the litigation before this court. Referral of this litigation back to the bankruptcy court is not, however, either a claim or a defense to this instant litigation. Seeking removal to the bankruptcy court is essentially a "venue" issue rather than a jurisdictional defense or claim – this court still maintains jurisdiction over this litigation even if it were before the Bankruptcy Court. A motion to re-refer this case back to the bankruptcy court is not a "defense or claim" in *this* district court litigation, and thus Executive Risk does not appear to have violated the Agreement, as the Trustee contends.

It is unclear to the court, however, that the Trustee has truly taken an inconsistent position with respect to whether or not this litigation should be part of the bankruptcy proceeding. It is undisputed that the Trustee, in the stipulations filed with the bankruptcy court, the representations made during the hearing before Judge Boulden, and the filed order signed by Judge Boulden, stated that he "agreed" to modify the automatic stay due to his own business judgment. Certainly, his business judgment might have changed over the interim, but he clearly made those statements before the bankruptcy court before bringing the instant motion to this court. It is unclear whether this is truly an inconsistent position with respect to the previous December Agreement, or whether this is just clever lawyering. Therefore, on judicial estoppel grounds alone, the court does not believe that this case should be referred back to the bankruptcy court. This is a close question, however, and because the court will deny the Trustee's motion on other grounds, it will proceed to discuss the other arguments.

*B. Executive Risk's Litigation Appears to Be at Least in Part a Core Proceeding*

The Trustee next argues that the proceeds of the insurance policy are part of NSFF's

estate and therefore involve core proceedings or are related to the bankruptcy. He argues that jurisdiction of this case is automatically referred to the Bankruptcy Court by standing order, and that the Bankruptcy Court should determine the issues prior to this court getting involved.

"Core proceedings" are those directly relating to the "restructuring of the debtor-creditor relations,"[18] and these are listed in 28 U.S.C. § 157(b)(2). "Non-core proceedings" include matters that are not "core," but are otherwise related to a case under title 11.[19] And related proceedings are "those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court."[20] Bankruptcy courts may enter final orders on core proceedings,[21] but cannot enter final orders on related proceedings without consent of the parties. On these related proceedings, once a bankruptcy court submits proposed findings of facts and conclusions of law to the district court, the district court reviews *de novo* these submissions and then enters final judgment.[22]

Executive Risk's Amended Complaint seeks "to rescind . . . [the Policy] procured from Executive Risk through material misrepresentations during the underwriting process."[23] In the alternative, Executive Risk "seeks a determination that, even assuming the Policy was valid, no

---

[18] *Marathon*, 458 U.S. at 71.

[19] 28 U.S.C. § 157(c)(1).

[20] *John E. Burns Drilling v. Central Bank of Denver*, 739 F.2d 1489, 1494 (10th Cir. 1984) (quotations omitted).

[21] 28 U.S.C. § 157(b).

[22] 28 U.S.C. § 157(c)(1).

[23] Amended Complaint, Docket No. 74, at 2 (July 11, 2006).

coverage exists for the claims that have been made."[24]  There is no indication from the amended complaint that Executive Risk is seeking money *from* the Trustee or NSFF, or that it has any claim on NSFF's assets currently involved in the bankruptcy proceeding.  In fact, the amended complaint specifically states that Executive Risk has "tendered to the Bankruptcy Trustee for NSFF the premium for the Policy in order to effectuate the rescission."[25]  The gist of this amended complaint is that Executive Risk seeks to sever itself from any involvement with NSFF or its estate, rather than claiming any priority over assets or seeking monetary benefit from the estate.  Such a claim, at first glance, does not appear to actually involve the Title 11 proceeding currently in bankruptcy court.

Nonetheless, despite Executive Risk's belated efforts to end its relationship with NSFF, it appears disputed whether the proceeds from the earlier insurance policy now appear to be part of NSFF's estate.  Executive Risk has apparently conceded that at least a small part of the policy is the property of NSFF's estate[26] and that the proceeds of the policy may well be are property of the estate to the extent the estate seeks defense expenses covered by the policy.[27]  Executive Risk's amended complaint attacks the alleged material misrepresentations made to it before the

---

[24] *Id*.

[25] *Id*. at 17, ¶ 70.

[26] Trustee's Memo. in Supp. to Refer to Bankr. Court, Doc. No. 81, Ex. A-1 at 10 (July 18, 2006) (Mar. 25, 2005 Bankr. Hearing) (Mary Borja: "The policy itself is an asset of the estate.").

[27] *Id*. at 10-11 (Mary Borja: "The proceeds are an asset of the estate only to the extent of the debtor's interest in those policy proceeds. . . . So to the extent that the debtor is seeking those defense expenses, those proceeds would be an asset of the estate.").

bankruptcy proceedings, thereby not actually dealing with the "core" proceeding of creditor priority or actual proceeds.  To be sure, the proceeds of the insurance policy are arguably part of NSFF's estate, but the parties are in dispute as to whether the policy was void *before* the bankruptcy filing.

Because the litigation in this court deals with the policy at issue, it is possible that that the Trustee might ultimately prevail on the argument that this matter is a "core" proceeding.  Under 28 U.S.C. § 157(b)(3), "[t]he bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under [title 11] or is a proceeding that is otherwise related to a case until title 11."  Usually, this would be a decision the Bankruptcy Court would ultimately make.  In this situation, the court would generally refer the matter back to the bankruptcy court so that it could have the first crack at this issue.  But it is clear that the bankruptcy court has lifted the automatic stay to allow this district court litigation proceed.  On that assumption alone, the court believes the bankruptcy court has implicitly decided that *even if* the litigation is a "core" proceeding, it could proceed in this court first.  Given that decision, and given that on its face this matter does not appear to be a "core" proceeding to this court, the court DENIES the Trustee's motion to refer this litigation back to the bankruptcy court.

*C. Judicial Efficiency and Fairness Do Not Necessitate Denying the Trustee's Motion*

Finally, Executive Risk argues that judicial efficiency and fairness necessitate denying the Trustee's motion for a reference back to the Bankruptcy Court.  Executive Risk's arguments have strong appeal, as at first glance it appears simpler to keep this action before this court.  The court understands that, at some point, it may well have to get involved in the litigation, either by

deciding certain issues or reviewing the Bankruptcy Court's findings of fact and conclusions of law *de novo*.  Since several defendants have requested a jury trial on the issue, and Executive Risk has said that does well, the court wonders whether it would be more efficient to have these questions raised by this litigation decided now before the bankruptcy court proceeds on the issue of NSFF's estate's proceeds.  These requests may well ultimately dictate a jury trial before this court. It is clear that Fed. R. Civ. P. 38(d) requires consent of the parties to withdraw a demand for trial, so a jury trial is ultimately required in this case unless it is decided at the summary judgment stage.  Since it is unlikely all of the parties will consent to withdrawal of the jury demands by some of the defendants, it appears the court will likely become very involved sooner or later.  And the Trustee conceded in oral argument that due to the jury demands, referral of this case back to this court would likely be "automatic and instantaneous."

The court has no doubt that the bankruptcy court is highly competent on the issues surrounding bankruptcy.  Nonetheless, the automatic stay has already been lifted, the bankruptcy court granted the lifting of this stay after a hearing, the parties previously stipulated to the lifting of this stay, and several parties have requested a jury demand that appears unlikely to be withdrawn, so the court believes that it should keep this case.  Therefore, in the interests of judicial efficiency and fairness to the parties, the court DENIES the Trustee's motion to refer this matter back to the bankruptcy court [#80].

Additionally, given the discussion surrounding Fed. R. Civ. P. 38(d), the court DENIES without prejudice defendant Shauna Black's motion for leave to file an amended answer and counterclaim to Executive Risk's complaint [#124].  Ms. Black indicates that she desires to

amend her request for a jury trial, but she does not indicate that she has received consent of the parties to withdraw that request.  By the same token, defendant Dan Clark's Notice of Withdrawal of Jury Demand [#115] is deemed MOOT because he has also not demonstrated that he has received consent of the parties to withdraw that demand.

## CONCLUSION

The court DENIES the Trustee's motion for an order referring this litigation to the Bankruptcy Court [#80].  Additionally, the court GRANTS the respective motions for joinder filed by defendants Dan Clark [#122] and Marion Markle [#117].  Finally, defendant Shauna Black's motion for leave to amend her complaint is DENIED [#124] and Mr. Clark's notice of withdrawal of jury demand is deemed MOOT [#115].  In light of these actions, the motion by Executive Risk for a Rule 16 Scheduling Conference [#96] is GRANTED.

Further, the court sets a discovery cutoff date of March 1, 2007 and a dispositive motions cutoff date of April 1, 2007.  The two criminal defendants awaiting trial and the two criminal defendants awaiting sentencing are not required to provide discovery until January 1, 2007.  The Trustee is requested to provide an interrogatory request to Executive Risk, the four non-criminally charged defendants are requested to provide one consolidated interrogatory request to Executive Risk, and the four criminally charged defendants are requested to provide one consolidated interrogatory request to Executive Risk.

A five-day trial is set for September 10-14, 2007.

    SO ORDERED.

    DATED this 11th day of September, 2006.

                        BY THE COURT:

                        _____

                        Paul G. Cassell
                        United States District Judge